**Herbert DIGGS, Appellant,**

v.

**FIRST NATIONAL BANK & TRUST COMPANY OF LEXINGTON, Lexington, Kentucky, as Trustee Under the Will of William E. Caskey, Deceased, et al., Appellees.**

Court of Appeals of Kentucky.

May 6, 1960.

Henry C. Cox, Eagle & Cox, Lancaster, for appellant.

Gess, Mattingly, Saunier & Atchison, Stoll, Keenon & Park, Lexington, for appellees.

MILLIKEN, Judge.

This appeal is from a summary judgment in favor of the appellee First National Bank & Trust Company of Lexington, hereinafter designated the Bank. The appellees, the Bank and Ann Caskey Cowgill, brought suit against Henry Diggs for possession of bonds and interest coupons found by Diggs in the attic of the garage on Bramble Farm in Fayette County. The farm was owned by the Bank as trustee under the will of William E. Caskey, and is occupied by Ann Caskey Cowgill as life tenant under the terms of the will. The trial court gave summary judgment in favor of the Bank on the ground that the bonds were the property of William E. Caskey at the time of his death.

There are several issues raised, but the appeal may be disposed of by ruling on the following two issues: First, may the trial court allow additional affidavits to be filed in support of plaintiffs' motion for sum-

mary judgment, after the plaintiffs have moved for summary judgment with supporting affidavits and after the defendant has moved for summary judgment and objected to certain matters contained in the plaintiffs' supporting affidavits? Second, was the granting of the plaintiffs' motion for summary judgment proper?

■ Regarding the first question above, it was proper for the trial court to allow additional affidavits to be submitted by the plaintiffs in support of their affidavits for a motion for summary judgment. CR 56.05 deals directly with this matter and states in part: " * * * The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits."

■ In March, 1957, eight years after the death of William E. Caskey, while Diggs was performing his duties as an employee in the capacity of farm manager of Bramble Farm, he discovered, folded up within a necktie box, unregistered United States Government Bonds of the face value of $14,000, plus interest coupons. This box was inserted in another box and was found between strips of pasteboard in the attic of the garage near the main residence on the farm. The bonds were United States Treasury Bonds, dated December 1, 1944, maturity dates 1966-1971, and all bore an interest rate of 2½%. There were four $1,000 denomination bonds with interest coupons attached from September 15, 1947, to March 15, 1971, and two $5,000 denomination bonds with interest coupons attached from September 15, 1947, to March 15, 1971. Loose interest coupons for these bonds bearing dates of September 15, 1946, and March 15, 1947, were also found with the bonds in the tie box.

Bramble Farm was acquired by the decedent, William E. Caskey, in 1924. Until his death in December, 1949, he resided with other members of his immediate family in the main residence on Bramble Farm. Under his will the farm was placed in trust with Ann Caskey Cowgill to have possession and occupancy during her life. Since her father's death, she has had full, complete and continuous possession of the farm, and has lived in the main residence on it. William E. Caskey bred, raced, owned, bought and sold thoroughbred race horses, and in the course of his endeavors he accumulated a substantial estate.

Shortly after his death an inventory of the personal property in his estate was made by the appellee Bank as executor. Assets consisting of stocks, bonds and other intangible personal property of an aggregate value in excess of $400,000 were found in cardboard boxes and other containers in and about the main residence of the farm. From time to time, bundles and rolls of cash had been found in secluded locations in and about the main residence. Despite this secretive and eccentric conduct, Mr. Caskey kept rudimentary records. Introduced in evidence was a small black book, in which in his own handwriting in abbreviated form Mr. Caskey had itemized the dividends, royalties, rents and other income received by him from January, 1940, until his death in December, 1949, and had also entered a partial inventory of his stocks and bonds. Under date of March 18, 1946, there appears an entry which discloses that Mr. Caskey received $175 from coupons. The semiannual interest payments on the bonds involved in this action amount to $175, and the due date of the last paid coupons or coupons not found with the bonds involved was March 15, 1946. In the partial inventory there appears an entry which identifies bonds maturing from 1966 to 1971 with an interest rate of 2½%, and with interest payments due semiannually on March 15 and September 15. Mr. Caskey also kept running inventories of his stocks and bonds. One such inventory in his own handwriting and on his personal stationery discloses that he listed in the inventory of December 8, 1945, bonds with an aggregate face value of $14,000 and with interest rate of 2½%.

So far as is known, no other unregistered coupon bonds yielding such a semi-annual interest payment payable at such times were owned by Mr. Caskey during the period in question, and no United States Treasury Bonds or similar securities in the aggregate face amount of $14,000, or any similar value, have been discovered.

Nothing put forward by the appellant controverts the essential facts upon which the appellees' claim rests. Therefore there was no issue of a material fact to present to a jury and the court properly entered summary judgment for the appellee Bank on the basis that the bonds and coupons were held and owned by William E. Caskey at the time of his death, and under the terms of his will they were devised to the appellee Bank as trustee. Haynes v. Felder, 5 Cir., 1957, 239 F.2d 868; Baugh v. Williams' Adm'r, 1936, 264 Ky. 167, 94 S.W.2d 330.

The judgment is affirmed.